# United States District Court

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| JOSE FRANCISCO MAY | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-581 |
| | § | Judge Mazzant |
| OCWEN LOAN SERVICING, LLC | § | |
| WELLS FARGO BANK, N.A., | § | |
| Successor by merger to Wells Fargo | § | |
| Bank Minnesota, N.A., as Trustee fka | § | |
| Norwest Bank Minnesota, N.A., as | § | |
| Trustee for the Registered Holders of | § | |
| Structured Asset Securities | § | |
| Corporation First Franklin Mortgage | § | |
| Loan Trust, Mortgage Pass-Through | § | |
| Certificates, Series 2003-FF3, and | § | |
| UNKNOWN PARTIES | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Final Summary Judgment (Dkt. #30). The Court, having considered the relevant pleadings, finds that Defendants' Motion for Final Summary Judgment should be granted.

## BACKGROUND

On or about April 1, 2003, Plaintiff Jose Francisco May borrowed $176,000 from First Franklin Financial Corporation ("Franklin") secured by a Home Equity lien on property located at 2105 McDaniel Circle, Plano, Texas 75075 (the "Property"). Plaintiff executed a Texas Home Equity Note in the original principal amount of $176,000 (the "Note") and a Home Equity Security Instrument securing payment of the Note (the "Security Instrument").

The Security Instrument was assigned from Franklin to Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A., as Trustee f/k/a Norwest Bank Minnesota, N.A.,

as Trustee for the registered holders of Structured Asset Securities Corporation via a Corporate Assignment of Deed of Trust. The Security Instrument was then assigned to Defendant Wells Fargo Bank, N.A., successor by merger to Wells Fargo Bank Minnesota, N.A., as Trustee f/k/a Norwest Bank Minnesota, N.A., as Trustee for the registered holders of Structured Asset Securities Corporation First Franklin Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2003-FF3 ("Wells Fargo") via a Transfer of Lien. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is the mortgage servicer for Wells Fargo.

Plaintiff became delinquent in the payment of the Note by failing to pay the full amount of the installment due on August 1, 2008, and all installments due after that date. Plaintiff has also failed to pay insurance and property taxes on the Property since 2009.

In an attempt to cure the default, Plaintiff contacted Ocwen and submitted a request for loan modification. Plaintiff submitted his financial information as requested. Ocwen informed Plaintiff that the process would take approximately four weeks.

On or about February 9, 2010, Ocwen sent Plaintiff a notice of trustee's sale to one of his business addresses. Plaintiff asserts that he never received a notice of default with right to cure letter prior to receiving this notice of trustee's sale. Plaintiff also asserts that he was not given the opportunity to cure the default or a notice of the Rule 736 hearing. Plaintiff asserts that it was not until Ocwen sent the Notice of Trustee's Sale that he learned that his property was posted for foreclosure sale on March 2, 2010.

As a result of the foreclosure posting, Plaintiff filed suit against Defendants for the wrongful attempted foreclosure of the Property on March 1, 2010. Plaintiff obtained a temporary restraining order to stop the March 2010 foreclosure. During the course of litigation, Plaintiff was sent a loan

modification application by Ocwen. Ocwen told Plaintiff that the only reason Ocwen denied his initial loan modification was because the Property was a rental property. Ocwen asked Plaintiff for proof that the Property was his homestead. As a result, Plaintiff non-suited without prejudice, and on February 12, 2012, Plaintiff reapplied for the loan modification, this time showing that the Property was his homestead. On April 19, 2012, Plaintiff received a letter from Ocwen, requesting a profit and loss statement. Plaintiff faxed his profit and loss statement on April 20, 2012.

On March 26, 2012, Plaintiff called Ocwen to inquire about the status of his loan modification application. Ocwen requested that Plaintiff refax the application. On March 27, 2012, Plaintiff faxed the application again.

On March 26, 2012, Ocwen, through foreclosure counsel, gave written notice and demand to Plaintiff of his default under the Note and Security Instrument, as well as Defendants' intent to accelerate the Note and declare the entire debt due and payable if the default was not cured. Plaintiff failed to remedy the default.

In May 2012, Plaintiff contacted Defendants to check on the status of the loan modification, which was still under review. Defendants reassured Plaintiff that they would be in contact soon. In June 2012, Plaintiff's wife contacted Defendants to check on the status of the loan modification. Despite previously granting Defendants permission to speak to his wife about the loan, Defendants refused to speak with her.

As a result of Plaintiff's default which remained uncured, Defendants elected to accelerate the Note. Ocwen, through foreclosure counsel, gave written notice of acceleration and posting to Plaintiff on May 14, 2012, and June 6, 2012. Plaintiff made no further payment nor tender of payment on the loan after Defendants accelerated the Note.

Wells Fargo authorized Ocwen to administer foreclosure proceedings due to Plaintiff's default in payment of the loan, and the Property was sold at a foreclosure sale on July 3, 2012. All payments were properly applied and the loan was in default at the time of foreclosure in July 2012. Wells Fargo is the owner and holder of the Note and was the owner and holder of the Note at the time of foreclosure. The Note is indorsed in blank, making it payable to the bearer. Ocwen possessed the original Note as servicer for Wells Fargo at the time of foreclosure.

On or about July 6, 2012, after the foreclosure at taken place, Plaintiff received a letter from Ocwen indicating that Plaintiff would not lose his home during the "HAMP evaluation," but Plaintiff was advised that foreclose could actually occur and that he should protect his rights under applicable foreclosure law.

On August 13, 2012, Plaintiff sued Defendants in the 366th Judicial District Court of Collin County, Texas, for claims of breach of contract, anticipatory breach of contract, violations of the Texas Debt Collection Practices Act ("TDCA"), violations of the Deceptive Trade Practices Act, ("DTPA"), breach of the common law tort of unreasonable collection efforts, negligent misrepresentation, and suit to quiet title and trespass to try title. Plaintiff also sought an accounting and declaratory judgment. On September 10, 2012, Defendants removed the case to this Court. On October 10, 2012, Plaintiff filed his First Amended Complaint.

On February 14, 2014, Defendants filed a Motion for Final Summary Judgment (Dkt. #30). On April 7, 2014, Plaintiff filed a response (Dkt. #39). On April 28, 2014, Defendants filed a reply (Dkt. #41).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims

or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49).  The nonmovant must adduce affirmative evidence.  *Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

**Breach of Contract Claim**

To sustain a breach of contract action under Texas law requires a plaintiff to show: (1) the existence of a valid contract; (2) plaintiff performed or tendered performance under the contract; (3) breach by defendant; and, (4) the breach damaged plaintiff. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citation omitted). It is well-settled that "a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (citation omitted).

Plaintiff alleges that Defendants breached the Security Instrument by failing to send all proper notices and, therefore, breached the Security Instrument when they foreclosed. Defendants assert that they are entitled to summary judgment on Plaintiff's breach of contract claim because Defendants sent all required notices and thus did not breach the Security Instrument.

In the event of the Plaintiff's default, the terms of the Note and Security Instrument require Wells Fargo to send Plaintiff a written notice of default. The summary judgment evidence establishes that Wells Fargo, through its servicer, Ocwen, sent notice of default and intent to accelerate to Plaintiff. Plaintiff became delinquent in the payment of the Note by failing and refusing to make the required monthly payment due on August 1, 2008. On March 26, 2012, Ocwen, through its foreclosure counsel, sent Plaintiff a notice of default and intent to accelerate via United States certified mail.[1]

---

[1] Defendants point out that Plaintiff recently produced two copies of the March 26, 2012 notice of default to Defendants, with two different mailing addresses on them. Thus, Defendants assert that Plaintiff's own documents undermine his assertion that Defendants failed to give him a notice of default because, by producing these documents, Plaintiff has demonstrated that he actually received the March 26, 2012 notice of default twice.

The March 26, 2012 notice of default and intent to accelerate states that the Note has been declared in default, and it demands payment of all past due sums owed under the Note. The notice also states:

> In the event the default in payment has not been cured within 30 days of this notice, the Mortgage Servicer will accelerate the maturity date of the debt and declare all sums due under the Note immediately due and payable. In the event the Note is accelerated, the Mortgage Servicer will pursue the remedies available to it under the Note and Security Instrument, including scheduling the property for foreclosure sale according to the terms of the Security Instrument and the laws of the State of Texas.

The Court agrees that the evidence establishes that Defendants sent Plaintiff a notice of default that complied with the requirements of the Note and Security Instrument, as well as the Texas Property Code. The summary judgment record also shows that Defendants sent the required notice of acceleration and notice of the July 3, 2012 foreclosure sale to Plaintiff. Ocwen, through its foreclosure counsel, sent Plaintiff notices of acceleration and posting dated May 14, 2012, and June 6, 2012, via certified mail. The notices state that Wells Fargo has elected to accelerate the maturity of the debt and inform Plaintiff as follows: "If it is your intention to avoid the foreclosure sale of this property, all sums due must be paid prior to the date of sale indicated on the attached Notice of Trustee's Sale." The notices include a Notice of Trustee's Sale. The June 6 notice contains a Notice of Trustee's Sale that informed Plaintiff the Property would be sold at a foreclosure sale on July 3, 2012. The summary judgment record demonstrates that Defendants sent Plaintiff a notice of acceleration that complied with the requirements of the Note and Security Instrument, as well as the Texas Property Code.

Plaintiff's response asserts that Defendants fail to address Plaintiff's allegations that they failed to send proper notice prior to Defendants obtaining an order of foreclosure in 2010 and by

failing to give Plaintiff the opportunity to reinstate the loan. Plaintiff argues that Defendants failed to provide Plaintiff with notices as required by the Security Instrument, paragraph 21, which states that the Lender must "give notice to Borrower prior to acceleration," explaining that failure to cure will result in acceleration and sale of the property. Plaintiff asserts that this notice was not given prior to the 2010 Order of Foreclosure. Plaintiff also asserts that notices were not sent to the designated address. Plaintiff also asserts that he never received notice prior to the 2010 attempted foreclosure of the foreclosure hearing or of his right to cure the default.

Plaintiff offers no evidence to dispute that he was sent all required notices in 2012, prior to the foreclosure. Defendants have established as a matter of law that they sent the notices to the Property as well as to Plaintiff's alternative address.[2]

Defendants' reply points out that Plaintiff's reliance on the 2010 notices are nothing more than a distraction and an attempt to create a false fact issue. Defendants argue that the notices at issue in this case are the notices sent in 2012 resulting in a foreclosure in 2012. The Court agrees that the argument being made now that Defendants were required to send notices to Plaintiff prior to obtaining an order of foreclosure in 2009 is a new argument not pleaded and not properly before the Court. The Court agrees with Defendants that even if this argument were properly before the Court, the argument fails. The Security Instrument requires that a notice of default and notice of acceleration be sent prior to acceleration and foreclosure. The Security Instrument contains no requirement that Defendants provide notice prior to obtaining an order of foreclosure. Defendants

---

[2] Constructive notice is all that is required under Texas law. *WTFO, Inc. v. Braithwaite*, 899 S.W.2d 709, 720 (Tex. App.--Dallas 1995); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.--Houston [1st Dist.] 1993, writ denied). Under Texas law, there is no independent cause of action for breach of section 51.002. *See Ashton v. BAC Home Loans Servicing, L.P.*, No. 4:13–cv–810, 2013 WL 3807756, at *4 (S.D. Tex. July 19, 2013); Tex. Prop. Code Section 51.002(e).

obtained the order of foreclosure by filing an application for an order permitting foreclosure and following all the requirements of the court and the Texas Rules of Civil Procedure in connection with that application. Defendants were not required to provide any additional notice to Plaintiff under the terms of the Security Instrument. Moreover, the 2012 notices of acceleration each attach the order of foreclosure to the notice. Defendants are entitled to summary judgment because all proper notices were sent to Plaintiff.

Plaintiff also asserts that Ocwen imposed grossly excessive charges on Plaintiff's mortgage account. Plaintiff asserts that Defendant continually charged late fees as well as additional charges which breached the Security Instrument. Specifically, Plaintiff asserts that the following fees were excessive: (1) Property valuation fees in the amount of $109.00 in April 2009, May 2009, August 2009, June 2010, October 2010, February 2011, March 2012, and August 2012; (2) Property inspection fees in the amount of $10.50 in April 2009, May 2009, March 2010, May 2010, July 2010, September 2010, April 2011, February 2012, May 2012; (3) Title report fees in the amount of $300.00 in October 2009, in the amount of $75.00 in March 2010, $300.00 in March 2012, and $75.00 in August 2012; (4) Foreclosure fees in the amount of $72.00 in March 2010, $393.75 and $712.50 in July 2010, $35.00 in September 2010, $109.00 in November 2010, $35.00 in December 2010, $39.00 in January 2011, $29.25 and $500.75 in March 2011, $812.50, $125.00, and $50.00 in April 2011, and $400.00, $650.00, and $21.00 in July 2012; (5) Foreclosure costs in the amount of $49.00, $49.00, and $11.00 in July 2010, $100.00, $44.24, $290.81, $24.00, $2.00, and $86.34 in April 2011, $11.42, $11.42, and $175.00 in August 2011, $1.00 and $61.70 in January 2012; $100.00, $46.61, $3.00, $100.00, $25.00, $3.00, $28.00, and $34.50 in July 2012; (6) Loan reviewed for late charge and assessed $84.49 in June 2011, July 2011, August 2011, September 2011, October

2011, November 2011, December 2011, January 2012, May 2012, June 2012; and (7) Miscellaneous fees in the amount of $25.00 in August 2012 and September 2012. Plaintiff asserts that the total amount of these ancillary charges is $8,153.19.

Plaintiff asserts that Defendants may be authorized, by the Deed of Trust and Note, to charge inspection fees or corporate advances as well as miscellaneous fees, but Defendants are not authorized to subject Plaintiff's loan to unreasonable charges. Specifically, Plaintiff asserts that had Ocwen given Plaintiff the Notice of his right to cure or his right to reinstate in 2010, then none of the charges in 2010 would have ever accrued. This argument lacks any merit because Ocwen sent all required notices. Furthermore, as Plaintiff admits, Ocwen was permitted under the Security Instrument to do and pay for whatever is reasonable or appropriate to protect lender's interest in the Property. Plaintiff was in default, and Defendants incurred necessary and reasonable charges associated with preparing to foreclose and actually foreclosing on the Property. Plaintiff has failed to make a payment in almost six years and has failed to pay insurance and property taxes. Plaintiff has failed to establish a material fact issue on how the charging of these fees was a breach.

**Waiver**

Plaintiff's response asserts that Defendants' conduct constitutes a waiver of their right to foreclose. Plaintiff asserts that Defendants repeatedly postponed Plaintiff's foreclosure because Plaintiff was being reviewed for a loan modification, and then unexpectedly sold his property. Plaintiff also points to a letter dated July 6, 2012, stating that the Property would not be sold during the foreclosure process, memorializing what Plaintiff already believed to be true. Plaintiff argues that this conduct raises an issue of fact whether Defendants waived those provisions of the Note and Deed of Trust.

Under Texas law, "[t]he elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)." *G.H. Bass & Company v. Dalsan Properties—Abilene*, 885 S.W.2d 572, 577 (Tex. App.–Dallas 1994, no writ); *Wigginton v. Bank of New York Mellon*, No. 3:10-cv-2128, 2011 WL 2669071, at *4 (N.D. Tex. July 7, 2011); *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "Intent is the key element in establishing waiver," but "[t]he law on waiver distinguishes between a showing of intent by actual renunciation and a showing of intent based on inference." *G.H. Bass & Company*, 885 S.W.2d at 577; *Motor Vehicle Bd. of the Texas Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999). Where waiver is based on inference, "it is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party 'unequivocally [sic] manifested' its intent to no longer assert its claim." *G.H. Bass & Company*, 885 S.W.2d at 577.

The Court agrees that Plaintiff has failed to produce any evidence that Defendants waived their right to foreclose. Plaintiff failed to respond to Defendants' argument that the July 6, 2012 letter produced by Plaintiff does not constitute an unconditional waiver of Defendants' right to foreclose during the modification review. The language of the letter explains that foreclosure may occur if certain criteria are not met, and those criteria were not met. The fact that Plaintiff was being considered for a loan modification, without more, does not constitute a waiver. Plaintiff was never entitled to a loan modification and Defendants have no requirement to offer any modification. Plaintiff has produced no evidence that Defendants promised not to foreclose or waived their right to foreclose. It is Plaintiff's burden is to show that Defendants' conduct clearly demonstrated a waiver of their right to foreclose. *See El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d at 111. None

of this evidence offered by Plaintiff was sufficient to show an unequivocal manifestation of intent on the part of Defendants to relinquish their rights and remedies in the loan documents, especially in light of the fact that the parties never agreed to a modification. Because there is no summary judgment evidence that Defendants expressed an actual intent to waive their right to foreclose under the loan agreement, Plaintiff's waiver argument fails as a matter of law.

**Economic Loss Doctrine**

Defendants assert that Plaintiff's TDCA claim, as well as his claims for unreasonable collection efforts and negligent misrepresentation, are barred by the economic loss rule. Plaintiff alleges that Defendants violated the TDCA by making "repeated assurances that Plaintiff would receive a loan modification" while simultaneously charging "numerous fees to Plaintiff's account, resulting in foreclosure." Plaintiff also asserts that Defendants' alleged promise to modify Plaintiff's loan and subsequent foreclosure of the Property forms the basis of Plaintiff's claims for negligent misrepresentation and unreasonable collection efforts. Defendants assert that Plaintiff's sole basis for liability, if any, against Defendants is contractual in nature by the terms of Plaintiff's Note, Deed of Trust, and an alleged oral agreement between Plaintiff and Defendants.

The economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract. *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 541 (Tex. App. – Tyler 2008, pet. denied) (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *UMLIC VP LLC v. T&M Sales and Env'tl Sys., Inc.*, 176 S.W.3d 595, 614 (Tex. App.–Corpus Christi, 2005, pet. denied) (citing *Jim*

*Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).   The focus of the rule "is on determining whether the injury is to the subject of the contract itself." *Academy*, 260 S.W.3d at 541 (citing *Lamar Homes*, 242 S.W.3d at 12).   The rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. *Id.* (citing *Lamar Homes*, 242 S.W.3d at 12-13). "If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings." *OXY USA, Inc. v. Cook*, 127 S.W.3d 16, 20 (Tex. App. – Tyler 2003, pet. denied).   Thus, in order for a tort duty to arise out of a contractual duty, i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by the contract. *DeLanney*, 809 S.W.2d at 494. The economic loss rule applies to real estate transactions. *Reed*, 711 S.W.2d at 618.

"[W]hen a written contract exists, it is more difficult for a party to show reliance on subsequent oral representations." *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 651 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).   Generally, "negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." *Airborne Freight Corp. Inc. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295 (Tex. App.—El Paso 1992, writ denied); *see Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no. pet) (explaining that "there must be an independent injury, other than breach of contract, to support a negligent misrepresentation finding.").   "Under the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the

economic losses recoverable under a breach of contract claim." *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App.--Houston 2007, pet. denied).

Plaintiff responds that the economic loss doctrine does not bar Plaintiff's claims because Plaintiff's injury is independent from any breach of contract. Plaintiff asserts that there is evidence of personal injuries, which are outside the subject matter of the contract and benefit-of-the-bargain damages.

The Court agrees with Defendants that Plaintiff cannot demonstrate that Defendants owed him a duty that was independent of the loan documents. In this case, Plaintiff's claim arises from claims dependent upon the existence of a contract. Any complaints by Plaintiff about Defendants' actions arise from the parties' contractual relationship under the terms of the loan documents and cannot, as a matter of law, form the basis of a negligence or negligent misrepresentation claim. Moreover, Plaintiff's claim for mental anguish and emotional distress is premised on Defendants' alleged breach of an oral promise to modify Plaintiff's loan. Plaintiff cannot demonstrate that Defendants owed Plaintiff any duty independent of their contractual obligations under the loan documents. Therefore, because Plaintiff's claims for mental anguish and emotional distress are based on claims that are dependent upon the existence of a contract, the economic loss doctrine operates to bar these claims. *See Soufimanesh v. U.S. Bank, N.A.*, No. 4:12-cv-295, 2013 WL 3215744, at *16 (E.D. Tex. June 24, 2013).

**Texas Debt Collection Act Claim**

Plaintiff alleges that Defendants violated Texas Finance Code, Sections 392.304(a)(19), 392.304(a)(8), 392.303(a)(2), and 392.301(a)(8).

In order to state a claim under the TDCA, Plaintiff must show: (1) the debt at issue is a

consumer debt; (2) Defendants are debt collectors within the meaning of the TDCA; (3) Defendants committed a wrongful act in violation of the TDCA; (4) the wrongful act was committed against Plaintiff; and (5) Plaintiff was injured as a result of Defendants' wrongful act. *See* Tex. Fin. Code § 392.001, et seq.

The TDCA does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3); *Sweet v. Wachovia Bank and Trust Company*, No. Civ.A. 3:03-CV-1212-R, 2004 WL 1238180, at *3 (N.D. Tex. Feb. 26, 2004). The TDCA prohibits a debt collector from "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). The TDCA also prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer." Tex. Fin. Code § 392.304(a)(19). Section § 392.303(a)(2) prohibits a debt collector from using unfair or unconscionable means that employ the following practices: (2) collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

Section 392.304(a)(8) states, "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that ... misrepresent[s] the character, extent, or amount of a consumer debt." For a statement to constitute a misrepresentation under the TDCA, Defendants must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, No. 2–05–356–CV, 2006 WL 1791606, at *7 (Tex. App.--Ft. Worth June 29, 2006, pet. denied). Section 392.304(a)(19) prohibits the use of false representations or

deceptive means to collect a debt or obtain information concerning a consumer. Section 392.303(a)(2) of the Texas Finance Code prohibits a debt collector from collecting or attempting to collect interest or charges not authorized by the Note, Deed of Trust, or applicable law.

In support of his claim, Plaintiff pleads only that "[c]ausing Plaintiff to wait for loan modification approval while Defendants charge Plaintiff's account is a deceptive means to collect a debt." Charging late fees is permitted by the Security Instrument when Plaintiff is late in his monthly payment. Late fees are not a deceptive means to collect a debt, but a permissible act authorized by the contract between Plaintiff and Wells Fargo. Therefore, Plaintiff's claim under section 392.304(a)(19) must fail.

Plaintiff also claims Defendants violated section 392.303(a)(2) by attempting to collect penalties and fees they charged to Plaintiff's account as a result of their own fault. Section 392.303(a)(2) merely states that, in collecting a debt, a debt collector may not use unfair or unconscionable means that employ the practice of collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation which is not expressly authorized by the agreement creating the obligation or legally chargeable to the consumer. Plaintiff alleges that he did not make any monthly payments while waiting for the loan modification to be approved. The Security Instrument permits Defendants to collect late penalties and fees when monthly payments are late. Because Defendants had a right to collect late fees, Defendants are entitled to summary judgment on Plaintiff's claim for violation of section 392.303(a)(2).

Plaintiff also claims that Defendants misrepresented the character, extent, or amount of a consumer debt, in violation of section 392.304(a)(8), because Defendants agreed to provide Plaintiff with a loan modification and to postpone foreclosure, but instead foreclosed upon Plaintiff's

property. Section 392.304(a)(8) merely forbids "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Even if the Court finds that Defendants agreed to provide Plaintiff with a loan modification and then proceeded to foreclose, these actions do not constitute a misrepresentation of the character, extent, or amount of the debt owed by Plaintiff. Therefore, Defendants did not violate section 392.304(a)(8) and are entitled to summary judgment.

Plaintiff alleges that Defendants have violated section 392.301(a)(8) by foreclosing when the law prohibits it. Section 392.301 prohibits a debt collector from threatening to take an action prohibited by law in order to collect a debt. Defendants have a right under the Security Instrument to foreclose when the loan is in default. Defendants sent all required notices prior to foreclosure. Thus, Defendants took no action prohibited by law, and Plaintiff's claim for violation of section 392.301(a)(8) must be dismissed.

The Court does agree that Plaintiff offers no evidence that Defendants did anything that was false or deceptive in attempting to collect the debt, or threatened an action prohibited by law. The Security Instrument provides Defendants with a contractual right to foreclose on the Property in the event of a default. Representations related to a loan modification do not constitute an attempt to collect a debt. *See Singha v. BAC Home Loans Servicing, LP*, No. 4:10–CV–692, 2011 WL 7678684, at *7–8 (E.D. Tex. June 1, 2011). The summary judgment evidence shows that Plaintiff has had years to cure the default on the loan and that Defendants did not make false representations to Plaintiff.

The evidence in this case is clear that Plaintiff was never promised that he qualified for a loan modification. The fact that Plaintiff was encouraged to apply for a loan modification is not a

violation of the TDCA.  The fact that Plaintiff was denied a loan modification is not a violation of the TDCA.  There is no evidence that Defendants induced Plaintiff to remain in default.  Plaintiff has offered no evidence that Defendant charged Plaintiff any improper or excessive fees given his serious default on the loan.

The Court agrees that Defendants are entitled to summary judgment on Plaintiff's TDCA claim.[3]  Plaintiff's TDCA claim fails as a matter of law.[4]  *See Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 792-93 (N.D. Tex. 2013); *Singh*, 2012 WL 2013019, at *5.

**Unreasonable Collection Efforts Claim**

Defendants next assert that Plaintiff's claim for common law tort of unreasonable collection efforts fails as a matter of law because Plaintiff cannot produce any evidence that they engaged in a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.

Under Texas law, "[u]nreasonable collection is an intentional tort."  *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.–Dallas 2008, no pet.).  "[T]he elements are not clearly defined and the conduct deemed to constitute an unreasonable collection effort varies from case to case."  *Id.*  To recover on this claim, Plaintiff must prove that Defendants' debt collection efforts "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental

---

[3] The economic loss rule also bars Plaintiff's TDCA claim because it is "premised on alleged misrepresentations where the actions taken by the lender were wrongful only because they violated the agreement between the borrower and lender." *See Caldwell v. Flagstar Bank, FSB*, No. 3:12-cv-1855-K-BD, 2013 WL 705110, at * 12 (N.D. Tex. Feb. 4, 2013), *adopted by* 2013 WL 705876 (N.D. Tex. Feb. 26, 2013); *McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10–CV–424, 2010 WL 5834802, at *5 (E.D. Tex. Dec. 14, 2010), *adopted by* 2011 WL 675386 (E.D. Tex. Feb. 16, 2011); *Singh v. JPMorgan Chase Bank, N.A.*, No. 4:11–CV–607, 2012 WL 3904827, at *7 (E.D. Tex. July 31, 2012), *adopted by* 2012 WL 3891060 (E.D. Tex. Sep. 7, 2012).

[4] To the extent that Plaintiff alleges Defendants promised to refrain from foreclosure while reviewing Plaintiff's request for a loan modification, such allegations are barred by the statute of frauds.

anguish and bodily harm." *Id.* at 868-69 (citations omitted); *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, at *6 (N.D. Tex. Sept. 7, 2010). The reasonableness of conduct is judged on a case-by-case basis. *B.F. Jackson, Inc. v. CoStar Realty Information, Inc.*, No. H-08-3244, 2009 WL 1812922, at *5 (S.D. Tex. May 20, 2009) (citing *Woodrum v. Bradley*, No. 1314-90-00071-CV, 1990 WL 151264, at *4 (Tex. App.--Houston [14th Dist.] Oct. 11, 1990, writ denied)). Generally, "mental anguish damages alone will not establish a right of recovery; the plaintiff must suffer some physical or other actual damages in order to be entitled to relief." *Id.*

The Court has consistently applied the EMC standard. *See Watson v. Citimortgage*, Inc., 814 F. Supp. 2d 726, 734 (E.D. Tex. 2011); *Henry v. Citimortgage*, No. 4:11-CV-83, 2011 WL 2261166, at *4 (E.D. Tex. May 10, 2011); *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2011 WL 676955, at *6 (E.D. Tex. Jan. 27, 2011); *see also Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861 (5th Cir. 2013); *Milton v. U.S. Bank Nat. Ass'n.*, 508 F. App'x 326 (5th Cir. 2013).

Plaintiff has failed to provide any evidence that Defendants' conduct amounted to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm. Plaintiff's unreasonable collection efforts claim fails as a matter of law.[5]

**Negligent Misrepresentation**

Defendants further assert that notwithstanding that Plaintiff's negligence-related claims are barred by the economic loss doctrine, they also fail because promises of future conduct, in this case the loan modification or any alleged agreement to postpone the foreclosure of the property, is insufficient to support a claim for negligent misrepresentation.

In order to demonstrate a claim for negligent misrepresentation, Plaintiff must show: (1) the

---

[5] Plaintiff did not respond to Defendants' argument that this claim should be dismissed.

defendant made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representations. *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n.24 (Tex. 2002)). Notably, as to the second element of supplying false information, "the misrepresentation at issue must be one of existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied). "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." *Id.* Promises of future conduct are insufficient to support a claim for negligent misrepresentation. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 125 (Tex. App.—Austin 2003, no pet.). To be actionable, defendant's statements must pertain to an existing fact. *Id.*

The Court agrees that Plaintiff's misrepresentation claims fail because he cannot demonstrate any misrepresentations, nor can he demonstrate injury as a result of the alleged misrepresentations. Plaintiff has no right to a loan modification. Plaintiff's negligent misrepresentation claim fails, and Defendants are entitled to summary judgment on this claim.[6]

**Texas Deceptive Trade Practices Act ("DTPA")**

Defendants assert that Plaintiff's DTPA claim fails because he is not a consumer under the statute and there is no evidence of a violation.

---

[6] Plaintiff's assertion that he was overcharged in the amount of $8,153.19 as a basis for a negligent misrepresentation claim fails because Plaintiff has failed to demonstrate that these charges were improperly charged after he defaulted on his loan.

To qualify as a consumer under the DTPA, a plaintiff must (1) seek or acquire goods or services and (2) the goods or services purchased or leased must form the basis of the complaint. *Modelist v. Deutsche Bank Nat. Trust Co.*, No. H-05-1180, 2006 WL 2792196, at *7 (S.D. Tex. Aug. 25, 2006) (citing *Sherman Simon Enters., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 14 (Tex. 1987)). Whether a plaintiff is a consumer under the DTPA is a question of law. *Id.* (citing *Holland Mortgage & Inv. Corp. v. Bone*, 751 S.W.2d 515, 517 (Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.)).

In evaluating whether Plaintiff is a consumer under the DTPA, the Court must look to the object of the transaction. Tex. Bus. & Com. Code Ann. § 17.45; *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 567 (Tex. 1984). In *La Sara Grain Company*, the Texas Supreme Court held that a lender may be subject to a DTPA claim if the borrower's "objective" was the purchase or lease of a good or service. *La Sara Grain Co.*, 673 S.W.2d at 567. However, a person whose objective is merely to borrow money is not a consumer, because the lending of money does not involve either the purchase or lease of a good or service. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980).

In the present case, it is undisputed that Plaintiff's claims arise out of a loan and do not involve the purchase or lease of either goods or services. Plaintiff did not seek to purchase or lease any goods or services from Defendants. Plaintiff is not a consumer as a matter of law under the DTPA because the transaction at issue is a mortgage loan, a transaction that relates only to the borrowing of money, which is neither a good nor a service and which is something that Plaintiff did not seek to purchase or lease. Therefore, Plaintiff is not "consumer" with respect to the loan. Therefore, because Plaintiff cannot claim "consumer" status, he cannot maintain a DTPA action and

the claim must be dismissed as a matter of law.

**Suit to Quiet Title and Trespass to Try Title**

Plaintiff asserts that he has superior title to the Property because the foreclosure of the Property is void.

"To prevail in a trespass-to-try-title action, Plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004) (citation omitted). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id.* (citation omitted).

A suit to quiet title is an equitable remedy to clarify ownership by removing clouds on the title. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007). To establish a claim for suit to quiet title, Plaintiff must show the following: (1) an interest in specific property; (2) that title to the property is affected by a claim by the defendant; and (3) that the claim, although facially valid, is invalid or unenforceable. *Sadler v. Duvall*, 815 S.W.2d 285, 293, n.2 (Tex. App.–Texarkana 1991, pet. denied). An adverse claim, to constitute a cloud on the title removable by the court, must be one that is valid on its face but is proved by extrinsic evidence to be invalid or unenforceable. *Id.*

Plaintiff has failed to produce summary judgment evidence of his superiority of title. Defendants have established that the foreclosure of the Property was proper and is not void. Wells Fargo was the purchaser at a proper foreclosure sale and has superior title. Thus, Plaintiff has no basis for an action based upon trespass to try title or quiet title.

**Declaratory and Other Equitable Relief**

Defendants also move for summary judgment on Plaintiff's claims for declaratory relief. The federal Declaratory Judgment Act states, "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but does not impose a duty to do so. *Id.*

The Declaratory Judgment Act is a procedural device that creates no substantive rights, and requires the existence of a justiciable controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-241 (1937); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984). Thus, the Act provides no relief unless there is a justiciable controversy between the parties. The Fifth Circuit stated as follows:

> In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future. Based on the facts alleged, there must be a substantial and continuing controversy between two adverse parties. The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury.

> Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects. To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments.

*Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations and quotations omitted).

Plaintiff seeks declaratory judgment that "Plaintiff has not materially breached the Security Instrument contract on the Property, that Defendants have no standing or waived [their] right to foreclose, and that Defendants wrongfully foreclosed on Plaintiff's Property." At the present time, there is no actual controversy between the parties that would allow for declaratory relief, and this claim should be denied.[7] Furthermore, Plaintiff is not entitled to the equitable remedy of an accounting because he has no viable cause of action.

It is therefore **ORDERED** that the Defendants' Motion for Final Summary Judgment (Dkt. #30) is hereby **GRANTED** and Plaintiff's case is **DISMISSED** with prejudice.

**SIGNED this 9th day of June, 2014.**

*Amos Mazzant*

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff seeks a declaratory judgment that Defendants wrongfully foreclosed on Plaintiff's Property, and he claims in his response that the foreclosure sale is void because of the allegedly inadequate selling price. However, even if this were true, Plaintiff fails to offer evidence that Plaintiff has failed to plead or provide any evidence of a defect in the foreclosure sale proceedings or a causal connection between the defect and the grossly inadequate selling price. To prevail on a claim for wrongful foreclosure requires a showing of "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.-Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.-Houston [14th Dist.] 1989, writ denied)).